```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
LENWOOD EVANS,                                              :
                                                            :
                            Petitioner,                     :    MEMORANDUM
                                                            :    DECISION AND ORDER
            - against -                                     :
                                                            :
DALE ARTUS, Superintendent,                                 :    08-CV-1137 (BMC)
Clinton Correctional Facility,                              :
                                                            :
                            Respondent.                     :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Petitioner *pro se* was convicted in state court for the murder of the estranged wife of his friend, Cooper. The jury found that petitioner, accompanied by Cooper and another friend, Hamlet, shot her point-blank in the head twice and once in the back, and convicted petitioner of intentional murder, N.Y. Penal L. § 125.25[1], and weapons possession, N.Y. Penal L. § 265.03[2]. As a second felony offender, the trial court sentenced petitioner to concurrent terms of twenty-five years to life for the murder and fifteen years for the weapons possession.

The sole issue presented in this habeas corpus proceeding under 28 U.S.C. § 2254 is whether petitioner's post-arrest confession, made while he was in custody and after he had invoked his right to counsel, occurred as a result of interrogation by the police. I find that the state court's holding that the confession was not the product of interrogation was neither contrary to nor an unreasonable application of the relevant Supreme Court authority, and therefore deny the petition.

## BACKGROUND

Prior to trial, the state court conducted a suppression hearing and made findings of fact. These findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Having reviewed the record, I conclude that there is no evidence that overcomes the presumption of correctness, and the facts are therefore taken from the suppression court's findings and testimony at the suppression hearing.

Petitioner was arrested the day after the murder at about 11:00 p.m. At the time of his arrest, one of the arresting officers, Sgt. Vittiglio, had a brief conversation with petitioner and told him "not to worry," that he should "tell the truth and he would be fine." Sgt. Vittiglio believed that he had established a rapport with petitioner. Sgt. Vittiglio's shift ended after processing the arrest and he went home.

The lead detective, John Reynolds, proceeded to interview petitioner and read him his Miranda rights. Petitioner refused to speak without an attorney and the interview ended.

Sgt. Vittiglio came back on duty the next morning. He understood, from conversations with fellow officers, that petitioner had invoked his Miranda rights. At about 12:40 p.m., he observed petitioner in his cell despondent and crying. He asked petitioner if petitioner wanted something to eat or drink or some cigarettes. Petitioner responded, "why did you leave me last night? I wanted to talk to you." Sgt. Vittiglio replied that he left because his tour had ended and that, "you should have talked to me last night." Petitioner responded that, "I saw this girl all night long, I had to do it, I shot her, I had to." Sgt. Vittiglio testified that he then told petitioner to "be quiet. . . . you have an attorney . . . I will go get a pack of cigarettes for you." Sgt. Vittiglio further testified that when he returned with the cigarettes, petitioner told him, "you don't understand . . . if I didn't do it, he would have shot me," to which he responded, "you have

an attorney, tell him, talk to him, explain it to him. Tell him to tell the judge. I can't talk to you. If you need anything, I will get it."

The suppression court found that petitioner's statements were spontaneous, voluntary, and not the result of interrogation or its functional equivalent. In affirming petitioner's conviction, the Appellate Division held, "the hearing court properly found that the statements he made to the police while he was in a holding cell were voluntary and spontaneous, and accordingly, admissible at trial." People v. Evans, 36 A.D.3d 830, 826 N.Y.S.2d 916, 917 (2d Dep't) (citations omitted), leave to app. den., 8 N.Y.3d 922, 834 N.Y.S.2d 512 (2007) (table).

## DISCUSSION

The issue that this case presents is whether the words or conduct of Sgt. Vittiglio constituted an "interrogation" or its functional equivalent so that petitioner was deprived of his right to counsel. The Appellate Division's negative answer to that question constitutes a legal conclusion subject to deferential review as set forth in 28 U.S.C. § 2254(d), and as defined in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

I see no serious contention that Sgt. Vittiglio's initial question – if petitioner wanted something to eat or drink or some cigarettes – constitutes interrogation. Petitioner was despondent. Sgt. Vittiglio was a supervisor in charge of the holding area. For him to ignore a despondent prisoner might have legal consequences beyond the crime for which the prisoner was being held. He was entitled to make some minimal inquiry, indeed, even to offer some soothing words, without the encounter rising to the level of an interrogation.

Petitioner, instead, focuses particularly on Sgt. Vittiglio's second statement, "[y]ou should have talked to me last night," viewing it as a solicitation to engage in discussion at that

moment so as to not let any more time pass before petitioner unburdened himself by confessing. In other words, petitioner construes the statement as, "since you didn't talk to me last night, you had better talk to me now." I think a far more plausible interpretation is that the statement reinforced and reminded petitioner that since he had invoked his right to counsel, the officer could not engage in conversation with petitioner. That interpretation is buttressed by the fact that when petitioner responded by confessing, Sgt. Vittiglio neither told him to keep talking, asked him more questions, nor stood by silently while petitioner continued to offer his explanation. Instead, Sgt. Vittiglio did just the opposite – he told petitioner to stop and "be quiet" because he "had an attorney."

Like most habeas petitions, the instant case is not one where the state court's ruling is even arguably "contrary to" Supreme Court authority. There is no Supreme Court case that is factually indistinguishable from this one, and in ruling on petitioner's claim, the state court recognized and acknowledged the rule that once a prisoner invokes his right to counsel, he may not be interrogated. See Taylor, 529 U.S. 362, 120 S.Ct. 1495. If petitioner is to obtain habeas relief, it would have to be because the state court "unreasonably applied" Supreme Court authority.

Since the prohibition against custodial interrogation without advice and waiver of the right to counsel laid down in Miranda v. Ariz., 384 U.S. 436, 86 S.Ct. 1602 (1966), there have been two Supreme Court cases that address the parameters of the concept of interrogation. In R.I. v. Innis, 446 U.S. 291, 100 S.Ct. 1682 (1980), the Court held that interrogation does not require express questioning: "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

incriminating response from the suspect." Id. at 300-01, 100 S.Ct. at 1689. The Court rejected the argument that *de facto* "subtle compulsion" constituted interrogation. To warrant exclusion, a court must find that the police should have known that their words or conduct would elicit an incriminating response. Based on this definition, the Court refused to find interrogation where two police officers had a conversation in front of the defendant to the effect that handicapped children might find the hidden murder weapon and injure themselves.

The possibility of "subtle compulsion" was also held insufficient to constitute interrogation in Ariz. v. Mauro, 481 U.S. 520, 107 S.Ct. 1931 (1987). There, the police were separately questioning the defendant, who had invoked his Miranda rights, and his wife for the defendant's murder of their son. The wife demanded to speak to the defendant, which the police permitted with an officer present and a tape recorder visibly recording. The defendant then made inculpatory statements during the conversation with his wife which were introduced at trial. The Supreme Court agreed with the lower court that police should have known that there was a "possibility" of incriminating statements in the conversation that they monitored. That, however, was insufficient to make the conduct the functional equivalent of interrogation. "Officers do not interrogate a suspect simply by hoping that he will incriminate himself." Id. at 529, 107 S.Ct. at 1936. See also U.S. v. Gelzer, 50 F.3d 1133, 1188 (2d Cir. 1995) (no interrogation where officer said to defendant that arrest had likely complicated defendant's New Year's Eve plans, and defendant responded, "[w]e're amateurs, not professionals").

I cannot find that the Appellate Division unreasonably applied these Supreme Court precedents in concluding that petitioner was not subjected to custodial interrogation. It is giving petitioner's argument more credit than it is due to allow that, at most, Sgt. Vittiglio had a "hope" that petitioner would say something self-incriminating, and even that would not be enough to

Page 5 of 6

raise the conversation to an interrogation. Much more likely, as noted above, is that the comment was meant to shut down further conversation about the case by reminding petitioner that he had demanded counsel, as Sgt. Vittiglio expressly did when petitioner failed to take his meaning and confessed anyway. There was simply no reason for Sgt. Vittiglio to believe that petitioner would respond to his reminder that petitioner had invoked his <u>Miranda</u> rights with a confession.

## CONCLUSION

The petition is denied. As petitioner has not made a substantial showing of the denial of a federal right, a certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253; <u>Tankleff v. Senkowski</u>, 135 F.3d 235 (2d Cir.1998). Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. <u>Coppedge v. U.S.</u>, 369 U.S. 438, 82 S.Ct. 917 (1962).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
───────────────────────
U.S.D.J.

Dated: Brooklyn, New York
　　　　August 6, 2008